(C. D. 196)

CARGILL ELEVATORS, INC. *v.* UNITED STATES

. United States Customs Court, Third Division

(Decided July 31, 1939)

*G. W. R. Wallace; Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: This is an action against the United States wherein the importer seeks to recover a certain sum of money claimed to have been unlawfully exacted on an importation of alfalfa seed that entered the United States at the port of Minneapolis, Minn. The protest filed reads as follows:

We claim that these goods are not subject to duty under the provisions of the Tariff Act of 1930, inasmuch as the condemned screenings, destroyed under the supervision of the Department of Agriculture, become condemned merchandise, and hence not subject to duty. We, therefore, claim the refund of excess duties paid.

We further claim that the assessment of duties made herein is illegal and void.

The collector answered the protest on the day following its receipt by him and stated his reason for denying the claim in the following language:

First: Paragraph 763, Tariff Act of 1930, under which the commodity is dutiable provides—

"That no allowance shall be made for dirt or other impurities in seed of any kind."

Second: The seed was not an importation prohibited by the Federal Seed Act, but only had to be stained one percent violet. Any segregation or cleaning which the importer may have undertaken was done voluntarily and not under the direction of the Department of Agriculture.

Third: Neither the seed as imported, nor any portion thereof which may have been segregated and destroyed by the importer, was condemned or abandoned under Section 506 Tariff Act of 1930.

An amendment to the protest was made on May 25, 1938, which reads:

We claim further that the said destroyed merchandise constitutes tare; and that the said destroyed merchandise constitutes a non-importation; and that an allowance or refund of the duties paid thereon, should be made.

When the case was called for trial the importer produced as its witness Mr. R. B. Dunham, superintendent of the elevators operated by the plaintiff herein. He had been connected with the company for about 30 years and had charge of the cleaning and operations of the plant. Concerning the importation in question this witness testified as follows:

Q. Now, do you remember the receipt in your warehouse on or about October 22, 1936, of one car of alfalfa seed, Car C. N. 407295?—A. I have a record of it here.

Q. 544 bushels?—A. Right.

Q. Do you remember seeing that shipment when it came into your warehouse?—A. I did, yes.

Q. Now, what was the condition of the shipment?—A. Well, it had to be cleaned.

Q. Why did it have to be cleaned?—A. There were too many impurities in it.

Q. What did the impurities consist of?—A. Mostly chaff and things like that.

Q. Now, did you have any communication or correspondence from the Department of Agriculture in connection with that shipment?—A. That part of it I couldn't say, because I don't have charge of that. That is the management. All I have charge of is the operating and cleaning of this stuff.

Q. Do you remember about when the shipment was cleaned?—A. I made up a dump ticket, which I have right here before me, showing the operations of that entire shipment; started the operation 10/29/36, this particular car.

Q. Were any representatives of the Department of Agriculture present at the time when it was cleaned?—A. Yes, if I remember correctly; yes, they always are. They have supervision of cleaning and destroying the seeds. I understand they have to be destroyed.

Q. Now, in cleaning this shipment, have you any records to show how many pounds were destroyed?—A. I have; we keep a record of all our cleaning operations.

Q. Have you refreshed your recollection by referring to those records?—A. I have. 3411 pounds.

Q. How many pounds were destroyed?—A. 3411.

By Judge Keefe:

Q. In other words, that was about the amount of foreign material, chaff and things of that kind, that you took from it in the cleaning of the alfalfa seed?—A. Yes.

By Mr. Schwartz:

Q. Now, was this shipment placed into your warehouse directly from the car?—A. Yes, sir.

That is all.

Cross-examination by Mr. WELSH:

X Q. This cleaning was purely voluntary upon your part, was it not?—A. Yes.

X Q. It wasn't demanded by the customs officials or by the Department of Agriculture?—A. Well, now, I couldn't say as to that.

X Q. Does the Cargill Elevator Co. have in its possession, to your knowledge, any written document constituting an order of any kind, by which it was demanded that you clean that seed?—A. I have no record myself.

X Q. Do you know whether or not that is a fact? Were you ordered by the Department of Agriculture?—A. I was demanded by my employers to clean that.

From the foregoing testimony it appears that the importer voluntarily cleaned the imported alfalfa from impurities, which impurities consisted of "mostly chaff and things like that." The statutes relating to the importation of seed read as follows:

Paragraph 763 of the Tariff Act of 1930:

Grass seeds and other forage crop seeds: Alfalfa, 8 cents per pound; * * * *Provided, That no allowance shall be made for dirt or other impurities in seed of any kind.* [Italics ours.]

Section 507 of the Tariff Act of 1930:

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, *but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.* [Italics ours.]

Section 111, title 7, U. S. C. A., page 40:

SECTION 111. GENERAL PROHIBITION AGAINST IMPORTATION; EXCEPTIONS. The importation into the United States of seeds of alfalfa, barley, Canadian bluegrass, Kentucky bluegrass, awnless bromegrass, buckwheat, clover, field corn, Kafir corn, meadow fescue, flax, millet, oats, orchard grass, rape, redtop, rye, sorghum, timothy, vetch, rye grass, and wheat, or mixtures of seeds containing any of such seeds as one of the principal component parts, which are adulterated or unfit for seeding purposes under the terms of this chapter, is hereby prohibited; and the Secretary of the Treasury and the Secretary of Agriculture shall, jointly or severally, make such rules and regulations as will prevent the importation of such seeds into the United States: *Provided, however,* That such seed may be delivered to the owner or consignee thereof under bond, to be recleaned in accordance with and subject to such regulations as the Secretary of the Treasury may prescribe, and when cleaned to the standard of purity specified in this chapter for admission into the United States such seed may be released to the owner or consignee thereof after the screenings and other refuse removed from such seed shall have been disposed of in a manner prescribed by the Secretary of Agriculture: *Provided further,* That this chapter shall not apply to the importation of barley, buckwheat, field corn, Kafir corn, sorghum, flax, oats, rye, or wheat not intended for seeding purposes, when shipped in bond through the United States or imported for the purpose of manufacture. (Aug. 24, 1912, c. 382, Sec. 1, 37 Stat. 506; Aug. 11, 1916, c. 313, 39 Stat. 453.)

Article 573, Customs Regulations of 1931:

Art. 573. Kinds and proportions of seeds to be colored.—(a) Except as provided in paragraph (c) or (d) of this article, the importation into the United States of

seeds of alfalfa or red clover, or any mixture of seeds containing 10 percent or more of the seeds of alfalfa and/or red clover, is prohibited, unless at least 1 percent of the seeds in each container is stained with the color required by paragraph (b) of this article.

(b) Except as provided in paragraph (c) or (d) of this article, the seeds of alfalfa or red clover and any mixture of seeds containing 10 percent or more of the seeds of alfalfa and/or red clover grown in Canada shall be colored iridescent violet, and such seeds grown in any other country or region shall be colored green.

Article 574, Customs Regulations of 1931:

Art. 574. Methods of coloring seeds.—(a) Color used shall be in the form of an aqueous solution of such concentration as to color the seeds distinctly with the colors prescribed.

(b) The designated proportion of the seed will be completely colored and blended with the uncolored seed.

It appears that the importer relies on the provisions of section 111 for his relief and on the claim that the amount of material removed from the alfalfa seed constituted a nonimportation.

So far as the record discloses this merchandise was not brought within the provisions of section 111, in that there is nothing in the record to show that it was prohibited in the first instance, nor was it merchandise to which the proviso in the statute was applied, since it was not ordered to be cleaned under bond under regulations of the Secretary of the Treasury. The cleaning process removed dirt or other impurities, for which no allowance can be made because paragraph 763, supra, prohibits the making of any allowance, nor can he find relief under the provisions of section 507, supra, because the last-named section limits the allowance for tare in imported merchandise to excessive moisture and other impurities not usually found in or upon such or similar merchandise and the evidence establishes that in the instant case the loss in weight was due to the removal of dirt, chaff, and impurities usually found in alfalfa seed.

Plaintiff contends in its brief that the "refuse portion" of the alfalfa seed constituted a nonimportation which was nondutiable. We can find no support for this contention either in the statute or the evidence. The record shows that this so-called refuse portion, so far as it consisted of dirt, chaff, and other impurities, was properly a part of the dutiable weight of the alfalfa seed for the testimony fails to show that it was in excess of the usual amount found in such or similar merchandise. See Rosenbaum Grain Corporation, etc. v. United States, C. A. D. 18.

There is no support in the record for plaintiff's claim that the assessment of duty herein amounted to levying duty upon prohibited merchandise. Section 111 of the Federal Seed Act, supra, prohibits the importation of alfalfa seeds which are adulterated or unfit for seeding purposes. The evidence fails to establish that the imported alfalfa seed was adulterated or unfit for seeding purposes.

Judgment will be rendered for defendant. It is so ordered.